IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PRUDENTIAL MUTUAL FUND SERVICES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| OLEN MEREDITH, Individually and as Executor | )   CIVIL ACTION NO. 1:20-00309-JB-N |
| of the Estate of Alma Ruth Meredith, THE | ) |
| ESTATE OF ALMA RUTH MEREDITH, PAUL | ) |
| MEREDITH, and ROBERT MEREDITH, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on Defendant Prudential Mutual Fund Services, LLC's

("Prudential") Motion to Dismiss the Counterclaims asserted by Paul Meredith and Motion for

Relief in Interpleader.  (Doc. 79).  Also before the Court is Olen Meredith's Motion to Dismiss the

Cross Claims asserted by Paul Meredith.  (Doc. 78).  The Motions have been briefed.  After

briefing, Paul Meredith filed a Motion to Dismiss for Lack of Jurisdiction and a Second Motion to

Dismiss for Lack of Jurisdiction.[1]  (Docs. 99 and 100).  With the benefit of oral argument on the

motions to dismiss and upon due consideration of the filed documents and relevant law the Court

finds as follows:

### I. BACKGROUND

Plaintiff Prudential filed this interpleader action against Defendants, Olen Meredith

("Olen"), the Estate of Alma Ruth Meredith ("the Estate"), Paul Meredith ("Paul"), and Robert

---

[1] Although Paul Meredith did not seek leave to file his Second Motion to Dismiss (Doc. 100) out of time, this Court is considering this motion in the interest of judicial economy.

Meredith ("Robert"), on June 9, 2020.  The interpleader funds are the balance of a Transfer on Death ("TOD") mutual fund (the "account').  This case is complicated because Olen, one of the TOD beneficiaries utilized a power of attorney to make three withdrawals from the account after Alma's death but before Prudential was given notice she was deceased.  Based on competing claims from the TOD beneficiaries and the Estate, Prudential filed an interpleader Complaint under 28 U.S.C. § 1335.  (Doc. 1).

> **A.**     **Prudential's Interpleader**

On November 15, 2012, Alma designated her sons, Defendant Olen Meredith ("Olen"), Defendant Robert Meredith ("Robert") and Defendant Paul Meredith ("Paul"), as primary Transfer on Death ("TOD") beneficiaries to her account, in equal shares, upon her death.  (Doc. 1).  Alma's beneficiary designation form identified her three surviving sons as both primary and alternate beneficiaries.  (*Id*.).  Prudential inquired with its agent and determined that the three were the primary beneficiaries of the TOD fund.  (*Id*.).  On or about January 18, 2013, the account number was changed to one ending in 7695, reflecting it had become a TOD fund.  (*Id*.).  On November 15, 2012, Alma also designated Olen as an agent with certain powers regarding the account.  (*Id*.).

Over the ensuing years, dividend payments were made to Alma regularly.  (Doc. 1).  No other disbursements were requested or made from the account between the time it was established and February 5, 2017, the date of Alma's death.  (*Id*.).  Alma's death was not reported to Prudential until June 19, 2018, nearly a year and a half later.  (*Id*.).  The value of the account on her date of death was $349,242.88.  (*Id*.).

Between February 5, 2017 and June 19, 2018, Olen exercised his Power of Attorney ("POA") making three withdrawals from the account.  On February 10, 2017, Olen withdrew $100,000.00.  On April 19 and June 26, 2017, Olen withdrew $60,000.00, for a total withdrawal of $220,000.00 before Prudential became aware Alma was deceased.  (Doc. 1.).

After making these withdrawals, Olen distributed some funds he withdrew from the account to the beneficiaries of the Estate, which includes Olen, Robert, Paul and Nicole Meredith (the daughter of Alma's son, Eric, who predeceased Alma, who is not a party to this action or a beneficiary of the account).  (*Id*.).  Olen (on behalf of himself and the Estate) and Paul have all made claims to the remaining funds and have contested the way those funds should be distributed.  (*Id*.).  Paul has asserted counterclaims against Prudential and Cross Claims against Olen.

**B.     Paul Meredith's Claims against Prudential**

With his Answer, Paul Meredith asserted five counterclaims against Prudential.  Paul also contests this Court's jurisdiction generally in his Answer and specifically in his later filed Motion to Dismiss for Lack of Jurisdiction.  (Docs. 74, 100).  Paul contends that Prudential is responsible for the $220,000 wrongfully withdrawn by Olen under the POA.  Paul maintains the interpleader action does not shield Prudential from liability because its actions caused the present dispute over the funds.

**C.     Paul Meredith's Cross Claims against Olen Meredith.**

Paul has also brought two cross claims against Olen.  Count One of the Cross Claim alleges Olen tortiously interfered with a contract while Count Two makes a claim for breach of fiduciary duties owed by Olen.  Olen has moved to Dismiss these cross claims, arguing they fail to state

claims for which relief can be granted.  Olen has also made a request for an award of attorney's fees and costs.

## II. LEGAL STANDARD

### A.      Motion to Dismiss.

Rule 12(b)(6), Fed. R. Civ. P., provides a court may dismiss a claim for failure to state a claim upon which relief can be granted.   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.  *Id*.  A plaintiff's claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). "Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions."  *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

### A.      Paul's Motion to Dismiss for Lack of Jurisdiction is Due to be Denied.

#### 1.      The Complaint satisfies the statutory jurisdictional requirements.

"Federal courts are courts of limited jurisdiction.   They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Friends of the Everglades v. U.S. E.P.A.*, 699 F.3d 1280, 1289 (11th Cir. 2012) (citation omitted); *see also Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1179 (11th

Cir. 2011) ("Subject matter jurisdiction of the lower federal courts is determined by Congress in the exact degrees and character to which Congress may seem proper for the public good.") (citation and internal quotation marks omitted).  Federal courts "only have the power to hear cases over which the Constitution or Congress has given them authority." *Title Pro Closings, L.L.C. v. Tudor Ins. Co*., 840 F. Supp. 2d 1299, 1302 (M.D. Ala. 2012).  If a federal court oversteps those bright-line boundaries, "it violates the fundamental constitutional precept of limited federal power." *Griffin v. Wal-Mart Stores East*, L.P., 884 F. Supp. 2d 1218, 1221 (N.D. Ala. 2012) (citations omitted).

Prudential filed this case asserting this Court has jurisdiction under 28 U.S.C. § 1335 because Olen is an adult resident of Florida, the estate is an Alabama legal proceeding, Paul is an adult resident of Louisiana, and Robert is an adult resident of New York.  (Doc. 1).  Section 1335 confers original jurisdiction on federal district courts in interpleader proceedings only where "[t]wo or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property." 28 U.S.C. § 1335(a)(1) (emphasis added); *see also American General. Life Ins. Co. v. Jones*, 2008 U.S. Dist. LEXIS 92850, *1, n.1 (S.D. Ala. Nov. 13, 2008) (recognizing "the requirement in statutory interpleader actions that there be at least minimal diversity between the claimants").  The allegations of Prudential's Complaint satisfy the minimum diversity requirements of Section 1335.

### 2.   The Complaint Satisfies the Equitable Jurisdictional Requirements.

Paul also contends Prudential may not bring this action in interpleader because he believes Prudential is responsible for the dispute which may subject it to multiple liability,

because Olen added his name to the TOD registration as a "joint owner" several days after Alma completed and signed the form.  (Doc. 100).

The facts alleged by Paul do not support the conclusion that Prudential's actions caused the dispute about ownership of the account proceeds.  The text of the TOD registration form expressly states joint ownership of a TOD account is not allowed.  (Doc. 75-1).  Olen's alleged after-the-fact addition of his name as a joint owner did not affect the ownership of the TOD account based on the express terms of the TOD Rules.

Paul also contends there is no real dispute regarding ownership of the funds Prudential has plead into Court.  (Doc. 100).  This contention is without merit.  At a minimum, the claims asserted by the Estate and the cross claims asserted by Paul against Olen bely this argument.  The Court finds that a sufficient dispute over the ownership of the account exists to support Prudential's interpleader.

Finally, Paul maintains his Niece Nicole Meredith is a necessary party because Olen shared portions of the account proceeds he improperly withdrew exercising his POA before notifying Prudential that Alma was deceased.  This theory is also unavailing.  The facts alleged in Prudential's Complaint and Paul's Counterclaim establish Olen's POA withdrawals from the account were effected without notice to Prudential.  Thus, under the terms of the POA, Prudential is not responsible to recover those funds to bring this interpleader action.

Paul's Motion to Dismiss for Lack of Jurisdiction is **DENIED**.

### B.    Paul's Amended Counterclaims are due to be Dismissed.

Paul has asserted five counterclaims against Prudential for various breaches of fiduciary duties under New Jersey law.  Contrary to the allegations of the Counterclaim, the Court finds

the law of Alabama is controlling over these counterclaims and, under Alabama law, the Counterclaims fail to state claims for which relief may be granted.

### 1.    Choice of Law.

"A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992). Alabama law follows the traditional conflict-of-law principles of *lex loci delicti* and *lex loci contractus*. *See Liberty Mut. Ins. Co. v. Wheelwright*, 851 So. 2d 466 (Ala. 2002).

Under the principle of *lex loci delicti*, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred. *Fitts v. Minnesota Mining & Mfg. Co.*, 581 So. 2d 819 (Ala. 1991). However, as to matters of procedure, "Alabama applies its own procedural law, *i.e.*, the law of the forum." *Middleton v. Caterpillar Indus., Inc.*, 979 So. 2d 53, 57 (Ala. 2007).

Under *lex loci contractus*, a contract is governed by the law of the jurisdiction within which the contract is made, "unless the parties have legally contracted 'with reference to the laws of another jurisdiction.'" *DJR Associates, LLC v. Hammonds,* 241 F. Supp. 3d 1208, 1220 (N.D. Ala. 2017) (citation omitted); *see also Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502 (Ala. 1991). Alabama recognizes "the right of contracting parties to choose the law of another state to govern their contractual rights and duties[.]" *Craig v. Bemis Co., Inc.*, 517 F.2d 677, 680 (5th Cir. 1975). However, the fact that a contract includes a choice of law provision does not mean that every possible claim relating to the subject of the contract is subject to the choice of law provision. *See, e.g., Sunbelt Veterinary Supply, Inc. v. Int'l Bus. Sys. U.S., Inc.,* 985 F. Supp. 1352, 1356 (M.D. Ala. 1997). Unless the parties' choice of law clause is broad enough to encompass non-contractual

claims, Alabama courts will apply the rule of *lex loci delicti*, which mandates claims brought in Alabama are to be decided by the law of the state where the injury occurred. *Id.*

Here, the TOD Registration form states it "shall be governed by and construed in accordance with the laws of the state of New Jersey," and "[t]he mutual fund accounts shall be subject to the PMFS TOD Rules and the laws of the State of New Jersey regarding TOD registrations." (Doc. 74, Ex. A). The Eleventh Circuit has considered choice of law provisions nearly identical to those of the TOD Registration form, construing it narrowly, holding it did not encompass "any and all claims or disputes." *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009) (holding "[a] choice of law provision that relates only to the agreement will not encompass related tort claims . . . For example, a provision providing that '[t]his release shall be governed and construed in accordance with the laws of the State of [X]' will be construed narrowly as it only purports to govern the agreement itself and does not refer 'to any and all claims or disputes arising out of the' agreement."); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003) (when a "choice-of-law clause provides that '[t]his release shall be governed and construed in accordance with the laws of the State of Delaware' . . . The effect of this clause is narrow in that only the release itself is to be construed in accordance with the laws of the State of Delaware. The clause does not refer to related tort claims or to any and all claims or disputes arising out of settlement or arising out of the relationship of the parties.")

The causes of action against Prudential are all styled generally as breach of fiduciary duty and sound in tort, rather than contract, thus placing them well outside the scope of claims anticipated by the TOD Registration's choice of law provision. The counterclaims do not seek

construction of the TOD Registration itself; rather the Court is being asked to determine alleged breaches of duty relating to the administration of Alma's account.  The Court finds that Alabama procedural and substantive law apply to Paul's counterclaims.

### 2. Paul Cannot State Breach of Fiduciary Duty Claims Against Prudential.

#### a. The Amended Counterclaim fails to allege the existence of a Fiduciary Relationship.

All five of Paul's Counterclaims assert breaches of fiduciary duty against Prudential.  The Amended Counterclaim however fails to allege the existence of a fiduciary relationship.  It is well settled in Alabama that to state a claim for breach of fiduciary duty, a party must allege: (1) the existence of a fiduciary relationship between the parties; (2) a breach of the fiduciary duty; and (3) damages caused by the breach.  *See Pickett v. State Farm Fire & Cas. Co*., 2018 U.S. Dist. LEXIS 56270, *5 (N.D. Ala. Apr. 3, 2018).

As a beneficiary with no vested interest in the account until Alma's death, Prudential had no relationship with Paul, fiduciary or otherwise, while Alma was alive.  The Rules printed on the TOD Registration form executed by Alma state:

> **[t]he TOD beneficiary has no rights with respect to the mutual fund account during the lifetime of the shareholder**.  Neither the TOD beneficiary's signature nor consent is required in connection with any matter regarding the administration of the mutual fund account during the lifetime of the shareholder.

(Doc. 74, Ex. A (emphasis added)).  The express terms and Alabama law make it clear Prudential owed no duty to Paul (or any other putative beneficiary) during Alma's lifetime.  *See Jenkins v. Lovelady*, 273 So. 2d 189, 194 (1973) ("A mere beneficiary in a policy of old line or ordinary life insurance which contains a provision for a change of beneficiary by the insured, has only an expectancy but no vested right until loss occurs."); *W. End Sav. Bank v. Goodwin*, 135 So. 161,

163 (1931) ("a mere beneficiary, in a policy which contains a provision for a change in that respect by the insured, has only an expectancy, but no vested right.").

To the extent Paul alleges a fiduciary relationship arose after Alma's death, such a claim is equally without merit. Under Alabama law, "a fiduciary relationship exists when one person has gained the trust of or inspired confidence in another person that he will act in good faith with the other's interest in mind." *Brown v. Gadsden Reg'l Med. Ctr. LLC*, , 2019 U.S. Dist. LEXIS 128248, *11 (N.D. Ala. Aug. 1, 2019). Such a relationship typically exists among partners or between a trustee and beneficiary, principal and agent, guardian and ward, managing directors and a corporation, etc. *See, e.g., Morgan Plan Co. v. Vellianitis*, 116 So. 2d 600, 603 (1959). Exceptions have arisen only in "'cases in which confidence is reposed by one party in another, and the trust or confidence is accepted under circumstances which show that it was founded on intimate personal and business relations between the parties.'" *Jumbo v. Alabama State Univ.*, 229 F. Supp. 3d 1266, 1273 (M.D. Ala. 2017) (citation omitted).

In the present case, Prudential and Paul do not have a confidential or fiduciary relationship. They are not parties to an ongoing business relationship, nor one founded on intimate trust and confidence. According to TOD Rule 8, the extent of Prudential's relationship with TOD beneficiaries is to "re-register a mutual fund account in the name of a TOD beneficiary" upon the death of the shareholder and once "all required documents are received in good order by PMFS." (Doc. 74, Ex. A). If any fiduciary relationship existed, it would have been between Alma and Prudential, thus Paul lacks the standing to assert such a claim. The Amended Counterclaim simply fails to allege the existence of a fiduciary relationship between Paul and Prudential.

### b.    Paul Does Not Allege Facts to a Support Fraudulent Suppression Claim.

Count V of the Amended Counterclaim, while also couched as a breach of fiduciary duty claim, attempts to state a claim for fraudulent suppression.  Essentially Paul contends that in 2013, Prudential actually knew of Olen's alleged "predation" yet failed to report or disclose it. (Doc. 74 at 21-22).  Further, in October 2018, Prudential, through Caitlin Hull, refused to report Olen to law enforcement.  (*Id*.).  Ms. Hull also allegedly suppressed information of Olen's alleged 2012 "predation" from Prudential to create "plausible deniability."  (*Id*.).

Under Alabama Code Section 6-5-102, "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud.  The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." To state a claim under this statute, a party must allege "(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury." *Lambert v. Mail Handlers Ben. Plan*, 682 So. 2d 61, 63 (Ala. 1996) (emphasis added).  "[W]ithout a duty to disclose, there can be no recovery for suppression." *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So. 2d 883, 891 (Ala. 2005).  Further, "[o]ne can be liable for suppression only of a fact of which one has knowledge." *Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So. 2d 1288, 1292 (Ala. 1993).

First, Paul fails to allege a duty to disclose.  The TOD Rules establish Prudential did not have a confidential relationship with Paul, nor were there special circumstances, so it was under no duty to disclose or report Olen to anyone merely because he handwrote his name on two forms and used a void Power of Attorney.  "Silence is not actionable fraud absent a confidential

relationship or some special circumstances imposing a duty to disclose." *Wilson v. Brown*, 496 So. 2d 756, 759 (Ala. 1986).

Paul does not allege Prudential actually knew of Olen's alleged "predations." Paul's allegation that Olen added his name on two forms having absolutely no effect on the account serves as "written notice of Olen's intention to exploit his position as Alma's POA for personal benefit" and an "attempt to take control of Alma's account" is insufficient. (Doc. 74 at 22). Because mere silence is not fraud absent a duty to disclose, "[t]here must be active concealment or misrepresentation" to support a fraudulent suppression claim. *Collier v. Brown*, 228 So. 2d 800, 802 (1969). "Concealment implies design . . . [it] must be for the purpose of continuing a false impression or delusion." *Marshall v. Crocker*, 387 So. 2d 176, 179 (Ala. 1980). No facts have been alleged which would plausibly support a finding Prudential acted by design to continue a false impression or delusion. Further, under Alabama law, "a 'material fact' is 'a fact of such a nature as to induce action on the part of the complaining party.'" *Graham v. First Union Nat. Bank of Georgia*, 18 F. Supp. 2d 1310, 1317 (M.D. Ala. 1998) (quoting *Bank of Red Bay v. King*, 482 So.2d 274 (Ala.1985)). Here, Paul alleges no facts to plausibly suggest that Prudential's alleged "suppression" induced him to do or not do anything. Paul's allegation that he "stopped short of fully revoking all authority placed in Olen, including the amendment of Alma's will so as to remove Olen as Executor and prevent the maladministration, that was foreseeable if given knowledge of Olen's covert actions" is insufficient. (Doc. 74 at ¶27.)

### c.   No Duties Were Breached

#### (1)   No Fiduciary Duties Were Breached.

Because there was never a fiduciary relationship between Prudential and Paul, as a matter of law, Prudential could not have breached duties arising out of such a relationship. However, even if there had been a fiduciary relationship, the Amended Counterclaim alleges no legally-recognized duties that were breached. In Alabama, "the existence of a duty is a strictly legal question to be determined by the court." *Taylor v. Smith*, 892 So. 2d 887, 891 (Ala. 2004). To make this determination, courts must consider several factors, including "(1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened." *Morgan v. South Cent. Bell Tel. Co.*, 466 So.2d 107, 114 (Ala.1985).

As an initial matter, all allegations regarding Prudential's actual or imputed knowledge of Olen's alleged "predation" must be disregarded, as they are legal conclusions couched as factual allegations. *See Twombly*, 550 U.S. at 555. The undisputed fact is that Olen handwrote his name on two forms submitted to Prudential. (Doc. 74 at 10). Neither modification was effective to make ownership changes. Paul's Amended Counterclaim is silent as to the effects of Olen's actions on the account, but as a matter of law they were of no effect. Prudential did not change the ownership of the account, nor did Olen attempt to engage in any transactions in his purported role as "joint owner" until discussions by his counsel before this action was filed. (*See id*. at ¶ 13). Olen's only transactions with the account occurred after Alma's death, and he did so while affirmatively representing to Prudential he was acting under the authority of Alma's POA and withholding from Prudential the fact that Alma was then deceased. (*See id*. at 12-13).

The allegations of Paul's Amended Counterclaim establish Prudential did not know of Alma's death when Olen requested the three disbursements. (Doc. 74 at 12). The POA contains standard language absolving Prudential of all liability "from acting upon instructions . . . believed

to have originated from said Agent in Fact and from any and all acts of said Agent in Fact" and for "acting in good faith in accordance with these instructions."  (Doc. 74, Ex. A ).  The POA states that "[a]ll orders executed and acts done by said PMFS in good faith after the death of the undersigned . . . without actual notice of such death . . . shall be and remain binding."  (*Id*.).  Because Prudential did not know of Alma's death at the time of the disbursements and because it acted in good faith under Olen's instructions and the representations he made relating to Alma, Prudential cannot be liable for honoring the POA.

In *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988 (11th Cir. 2014), the Eleventh Circuit, in analyzing duties owned by institutions to account holders, pointed out that Florida "does not require banking institutions that conduct routine banking services to investigate transactions . . . therefore, merely alleging that a bank should have known of a *Ponzi* scheme based solely on a series of purportedly atypical transactions is not sufficient."  *Perlman*, 559 F.App'x at 993-94.  The *Perlman* Court confirmed the lower court's finding that allegations of "a multitude of atypical transactions and procedural oddities . . . fall short of raising a plausible inference that [the bank] actually knew . . . [of] fraudulent activity.  At most they list facts that could arouse suspicions, and are not sufficient to trigger any obligation by [the bank] to investigate."  *Id*.; *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) (holding that while "'red flags' . . . may have put the bank[] on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge.").

The Eleventh Circuit has also looked to the "unequivocal line of authority" from courts in other jurisdictions finding that:

> [C]ustodian banks with no discretion to invest a customer's assets have no independent duty to supervise transactions on a customer's account . . . *See*

> *Sekerak v. Nat'l City Bank*, 342 F. Supp. 2d 701, 712 (N.D. Ohio 2004) (under Ohio law, custodian bank does not owe 'any duties beyond those made explicit in the Custody Agreement'); *Kaiser v. First Hawaiian Bank*, 30 F. Supp. 2d 1255, 1264 (D. Haw. 1997) (under Hawaii law, custodian bank has "no duty to monitor and report on" transactions made in customer's securities account and no liability for accepting securities that are 'worthless on their face'); *Abbott v. Chem. Trust*, 2001 WL 492388, at *7 (D. Kan. Apr. 26, 2001) (under Kansas law, custodian bank had 'no duty to investigate' assets in customer's self-directed IRA).

*Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947–48 (11th Cir. 2014).  Thus, based on the Eleventh Circuit's previous decisions in analogous contexts, entities such as Prudential have no duty to investigate alleged "predation" of an account.

Paul's argument that Prudential breached a fiduciary duty by allowing Olen to withdraw funds from the account under "suspicious and illogical circumstances" is equally unpersuasive. The characterization of the transactions as "suspicious" and "illogical" are legal conclusions not entitled to a presumption of truth.  As the Eleventh Circuit held in *Perlman*, merely alleging "atypical transactions and procedural oddities" does not demonstrate actual knowledge or trigger an obligation to investigate.  Further, it is clear from the face of the pleadings that the circumstances surrounding the transactions were far from suspicious and illogical.

### d.    Any Breach of Fiduciary Claim Would be Time-Barred.

As an initial observation, all of Paul's breach of fiduciary claims appear to be time-barred. Under Alabama law, breach of fiduciary duty is subject to a two-year statute of limitations.[2]  ALA. CODE § 6-2-38.  Under Alabama law, a statute of limitations runs when the conduct causing the breach was discovered or reasonably should have been discovered.  *See Casassa v. Liberty Life*

---

[2] Alabama's statute of limitations for fraud, like breach of fiduciary duty, is two years.  Ala. Code § 6-2-38.  A fraud claim "must be brought within two years after a plaintiff has discovered the facts constituting the fraud, or within two years after the plaintiff should have discovered those facts.  *Ishler v. Comm'r*, 442 F. Supp. 1189, 1216, 2006 WL 2170136 (N.D. Ala. 2006) (emphasis in original).  .

*Ins. Co*., 949 F. Supp. 825, 828, (M.D. Ala. 1996).  In other words, "at the time of the discovery of

facts which would provoke inquiry by a person of ordinary prudence and which, if followed up,

would have led to the discovery of the fraud." *Papastefan v. B & L Const. Co. of Mobile*, 385 So.

2d 966, 967 (Ala. 1980).  While the question of whether a party "discovered or should have

discovered" is usually a question of fact, it should be decided as a matter of law "in cases in which

the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud."

*Liberty Nat. Life Ins. Co. v. McAllister*, 675 So. 2d 1292, 1297 (Ala. 1995) (quotation omitted)

(emphasis in original).

From the Court's reading of the Counterclaims, the alleged breach in Count I appears to

be that in 2013, Prudential concealed Olen's "predation." (Doc. 74 at 15).  The alleged breaches

in Counts II, III and IV seem to have occurred when Prudential allowed Olen to withdraw proceeds

from the account in February 2017, April 2017 and June 2017 under "suspicious and illogical

circumstances . . . with actual notice of Olen's 2012 attempted predation." (*Id*. at 17-20).  The

breach in Count V is Prudential's further suppression of Olen's "predation" and failure to report

him to law enforcement in October 2018. (*Id*. at 22).  These "'naked assertions' devoid of 'further

factual enhancement,'" *Twombly*, 550 U.S. at 544, and "unadorned, the-defendant-unlawfully-

harmed-me accusations" should not be honored with the presumption of truth.  *Iqbal*, 556 U.S.

at 678.

However, even giving Paul the benefit of the doubt, the allegations of the Counterclaims

demonstrate he was on notice of Olen's purportedly improper motives with the account almost

immediately after Alma's death in February 2017.  In response to Olen's claim "that Prudential

might agree . . . to advance monies to the Estate," "Paul told him to just file the Estate,"

demonstrating that Paul knew Olen's intent was wrongful. (Doc. 74 at 12). Paul also "attempted to contact [Prudential] in fall of 2017 to complain that the 'advances' on the account were being used to circumvent probate," further evidencing his knowledge that the account was being handled improperly by Olen. (*Id*. at 2). However, the allegations also indicate during the alleged attempted contact, Prudential had not been advised of Alma's death and thus could not have communicated with Paul, a putative beneficiary, about someone else's account. The allegations do establish Paul acquiesced to Olen's scheme the entire time, as evidenced by his acceptance of twenty-five percent of the funds (*i.e.*, $52,500.00.00) withdrawn from the account before Prudential was notified of Alma's death. (*See id*.).

Paul's Counterclaim also demonstrates he actually knew of Olen's alleged untoward behavior as early as 2013:

> From 2013 through 2016, Olen attempted to commandeer Alma's finances to minimize her income and maximize his own. In 2013, Paul was forced to hire a Florida lawyer to combat Olen's predations (Exhibit B & C) and in 2014, Paul reduced and restricted Olen's role in Alma's finances by preparing and executing (with Alma's agreement) a Pre-Need Declaration (Exhibit D).

(Doc. 74 at 11). It was Paul who "acted as Alma's lawyer and primary caretaker" after her major stroke in 2001 and "continuously until her death." (*Id*. at 9). It is unreasonable that as Alma's lawyer and caretaker, Paul would not inquire into the circumstances surrounding the account, which Olen established with Alma at her home in November 2012, when he was on notice of Olen's "predations" as early as 2013 and went so far as to "combat" them by hiring a lawyer. (*See id*. at 9, 11). Paul's claims relating to any events in 2012 and 2013 are time-barred, as he knew or should have known of any alleged wrongdoing.

17

Finally, Paul alleges a breach occurred in October 2018, when an attorney retained by Prudential conducting an internal investigation into the matter "concealed evidence of Olen's predation in 2012," "suppressed the 2017 misappropriations," and did not entertain "Paul's demand for reporting the matter to law enforcement or the court."  (Doc. 74 at 14).  These allegations, even if true, do not state a plausible claim against Prudential because, as noted above, Prudential was under no obligation to report the matter to any person or entity.

This Court concludes there is no legal basis for one party to demand performance of something that another party is under no obligation to do, and then allege a breach merely because the party failed to comply with the demand.  Paul provides no authority suggesting the existence of such a duty.  "A party cannot breach where there was no contractual duty to perform . . . in the first place."  *Edmonson v. Cooper Cameron Corp.*, 374 F. Supp. 2d 1103, 1108 (M.D. Ala. 2005).  Further, as noted, this Court finds the Counterclaims repeatedly admit Paul was aware (or should have been aware) of Olen's alleged "predations" as early as 2013.  (Doc. 74 at 11).  He was also well-aware of, and acquiesced to, the withdrawals from the account in 2017.  (*See id.* at 12-13).

Because Paul actually knew of, or at the very least should have discovered, conduct constituting the alleged breaches over two years before filing the Counterclaim on August 7, 2020, the claims asserted are time-barred.

###    C.    Paul's Amended Cross Claims are due to be Dismissed.

Paul has asserted two cross claims against Olen.  Count One attempts to state a claim for tortious interference with contract and Count Two asserts a claim for breach of fiduciary duties.  Olen has moved to dismiss these cross claims, arguing they fail to state claims for which relief

can be granted.   Because these claims suffer from the same defects identified in Paul's

counterclaims against Prudential the Court finds these claims are due to be dismissed.

**1.      Count One fails to state a claim for which relief can be granted.**

While his first cross claim contains a wide range of allegations, Paul specifically alleges

Olen misused his power of attorney in withdrawing funds from the account after Alma's death.

Under Alabama law:

> [t]o state a claim for tortious interference, a plaintiff must establish the following
> elements: "1) the existence of a contract or business relation; 2) the defendant's
> knowledge of the contract or business relation; 3) intentional interference by the
> defendant with the contract or business relation; and 4) damage to the plaintiff as
> a result of the defendant's interference."

*Camp v. Corr. Med. Servs., Inc.*, 668 F. Supp. 2d 1338, 1361 (M.D. Ala. 2009), *aff'd in part sub nom.*

*Camp v. Corr. Med. Servs., Inc.*, 400 F. App'x 519 (11th Cir. 2010) (quoting *Pegram v. Hebding*,

667 So.2d 696, 701 (Ala.1995)).

Here Paul's cross claim does not plead the existence of a contract.  Paul implies the

creation of a contract through the gratuitous promise by he and his wife to "take care of" Alma

when she became "elderly."  (Doc. 74 at 23).  Paul also alleges Alma created the Prudential

account to provide income to her during her lifetime and to "leave behind a bequethment [sic]

to her three surviving sons."  (*Id*.).  Neither allegation establishes a contract which could support

an intentional interference claim.

This claim also suffers from the statute of limitations problem analyzed above with

the claims asserted against Prudential. In Alabama, a claim for intentional interference with

contractual relations has a two-year statute of limitations.   Paul seems to allege Olen's

"interference" began after the Prudential account was created.  (*Id*.).  Paul's other allegations

date Olen's actions beginning in November 2012 or January 2013, and include his withdrawals from the account between February 10 and June 26, 2017. (*Id*. at 12-13). Without a doubt, Paul knew, or should have known, Olen was engaged in the conduct he contends supports this claim by at least June 2017. Because intentional interference is an intentional tort, Alabama's two-year statute of limitations applies. *See* Ala. Code § 6-2-38(l). Paul's cross claim against Olen was first asserted in August 2020 and being over two-years after the claim arose, is barred by the statute of limitations.

**2.      Count Two fails to state a claim for which relief can be granted.**

Count Two asserts a claim against Olen styled as a breach of fiduciary duties. (Doc. 74 at 24-26). Review of the allegations however reveals these alleged duties were owed to either Alma or the estate, not to Paul. Count Two also focuses on disputes relating to the administration of the Estate pending in the Circuit Court of Mobile County and over which this Court has no jurisdiction.

To state a claim for breach of fiduciary duty, a party must allege: (1) the existence of a fiduciary relationship between the parties; (2) a breach of the fiduciary duty; and (3) damages caused by the breach. *See Pickett*, 2018 U.S. Dist. LEXIS 56270, *5. Because Count Two does not allege a fiduciary duty owed by Olen to Paul, it fails to state a claim for which relief may be granted.

**IT IS ORDERED**:

1.      Paul Meredith's Motion to Dismiss for Lack of Jurisdiction (Doc. 99) and Second Motion to Dismiss for Lack of Jurisdiction (Doc. 100) are **DENIED**.

2.      Paul Meredith's Amended Counterclaims against Prudential for Breach of Fiduciary Duty are all **DISMISSED**, with prejudice;

3.      Paul Meredith's Amended Cross Claims against Olen Meredith for Tortious Interference of Contract and Breach of Fiduciary Duties are **DISMISSED**;

4.      Prudential's Motion for Relief in Interpleader is **GRANTED**;

5.      Prudential shall be, and hereby is, discharged of any and all liability to Olen Meredith, Individually and as Executor of the Estate of Alma Ruth Meredith, The Estate of Alma Ruth Meredith, Paul Meredith and Robert Meredith (collectively, the "Adverse Claimants"), relating in any way to the account, which was owned by Alma Ruth Meredith and at issue in this litigation, which assets have been placed on deposit with the Registry of the Court (the "Assets");

6.      The Adverse Claimants shall be, and hereby are, permanently enjoined from making any further actual or implied claims, demands and causes of action, asserted or unasserted, express or implied, foreseen or unforeseen, real or imaginary, suspected or unsuspected, known or unknown, liquidated or unliquidated, of any kind or nature or description whatsoever, that the Adverse Claimants, jointly and severally, ever had, presently have, may have, or claim or assert to have, or hereinafter have, may have, or claim or assert to have, against Prudential with respect to the account or otherwise in connection with the Assets;

7.      Prudential shall be awarded attorneys' fees, disbursements, and costs incurred in connection with this action, in an amount to be determined as reasonable by this Court.  Should Prudential elect to forgo its claim for fees, disbursements and costs, it shall be **DISMISSED WITH PREJUDICE** without further action by this Court;

8.      Olen Meredith's request for an award of attorney's fees and costs is **DENIED** because he has provided no authority to support such a claim and the Court finds that his wrongful use of the POA directly created the conditions requiring Prudential to file this action;

9.      This action shall be retained on the Court's docket exclusively for resolution of claims to the Assets, and distribution thereof and Prudential's claim for fees, disbursements and costs, should it elect to submit one.  These are the only matters remaining pending before this Court; and

10.  Olen Meredith's Motion to Amend Order (Doc. 33), Motion to Strike (Doc. 96), Motion for Instruction Regarding Scheduling Order (Doc. 102), and Motion to Amend Order (Doc. 103) are denied as **MOOT**.

        **DONE and ORDERED** this 21st day of July, 2021.

                                        /s/ JEFFREY U. BEAVERSTOCK
                                        UNITED STATES DISTRICT JUDGE